1996 SD 79

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Randy Alan FOWLER, Defendant and Appellant.**

No. 19271.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Decided June 26, 1996.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Phillip O. Peterson, of Frieberg, Rudolph & Peterson, Beresford, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Randy Fowler appeals from a judgment of conviction after having been found guilty of attempted second degree rape, simple assault, and sexual contact. We affirm.

## FACTS AND PROCEDURE

[¶ 2] On July 6, 1991, Sally Doe [1] attended a street dance in North Sioux City, South Dakota with her sister. The two women arrived at the dance at 9:00 p.m. and did not leave until the dance was over around 2:00 a.m. the next morning. Randy Fowler, a police officer for North Sioux City, was on patrol that evening and stopped briefly to say hello to Sally and her sister at the dance. Sally knew Fowler from her employment at a gas station/liquor store in North Sioux City where the local patrolmen would stop to refuel their vehicles.

[¶ 3] Shortly after 2:00 a.m., Sally dropped her sister off at their parents' home and then started to drive herself home. At some point

---

1.  The victim's name has been changed to protect her privacy.

she noticed headlights and the flashing lights of a police car behind her. She stopped her vehicle and Officer Fowler approached and informed her she had a tail light out. He then asked her if she had been drinking. Sally admitted she had been as she had consumed three beers as well as some soft drinks during the five hours she and her sister had been at the street dance. Fowler stated he did not have his breathalyzer equipment with him and told Sally to follow him back to the police station. He did not ask her to perform any field sobriety tests. He did not ask her for her registration or driver's license. Sally drove her own vehicle and followed Fowler's patrol car to the station, approximately three miles from the stop site.

[¶ 4] Sally followed Fowler into the station, through a front room and into a second, private office. The doors to both rooms closed behind them. There, Fowler told Sally she was legally drunk and that he could arrest her for driving while under the influence, but would let her go if she would perform oral sex on him. Sally answered that he should arrest her because she was not going to do it. Fowler pulled his pants down to mid-thigh, exposing himself to Sally, and she moved to the back of the office still telling him she was not going to do it. Fowler then began twisting her breast while pushing her hand down on his penis and telling her to stroke him. He continued twisting her breast and told her to "go ahead and scream. It gets me off." Sally stroked him and he did not twist her breast as hard, but when she stopped, he twisted harder. Finally, when Sally could no longer stand the pain, she kneed him in the groin and headed for the door. Fowler caught up with her and, grabbing her by the neck and arm, pushed her back into the chair. He told her he was going to "come tonight" and forced his finger into Sally's mouth stating he was "going to come right there." Sally told him no and Fowler said yes, and told Sally he wanted her on her knees. Sally, still seated, shook her head no and looked down. When she looked up, she saw Fowler had his police night stick and was trying to force it between

her legs telling her how good a lover he was, that she would enjoy it, and that the night stick indicated how hard he was. Sally continued to tell Fowler no and pushed him away. She next heard gravel crunching outside the police station. Sally was still looking down when police officer Greg Hansen entered the room.

[¶ 5] Hansen asked Sally if she was okay and asked Fowler what was going on. Sally was crying and fled for her vehicle parked outside. Hansen followed her outside to inquire again if she was okay. Sally stated to Hansen, "Thank God you showed up when you did." When Hansen asked why, Sally stated she would tell him later.

[¶ 6] About a week later, Sally told Hansen that Fowler had told her she could either go to bed with him or be arrested. Hansen asked Sally if she wanted to make a formal statement and she agreed to do so. Hansen reported this to then-police chief Scott Price. There was no further investigation into the matter but Sally learned later that Fowler was no longer with the North Sioux City police force. In April 1994, Sally was contacted by police chief Skip Ensley about the matter and gave him a statement.

[¶ 7] On May 6, 1994, Fowler was charged with attempted rape in the second degree, kidnapping, sexual contact, and simple assault as a result of the events of the night of July 6–7, 1991. The trial was held in Brookings County on a change of venue motion by Fowler. Fowler's motion to dismiss pursuant to the "180-day rule" of SDCL 23A–44–5.1 was denied. Following a two-day jury trial in June 1995, Fowler was convicted of attempted rape in the second degree, sexual contact and the simple assault charges. He was acquitted of the charge of kidnapping. On August 14, 1995, he was sentenced to twelve and one-half years on the attempted rape conviction and one year each on the two misdemeanor charges. The sentencing court pronounced the twelve and one-half year sentence would be concurrent with the one-year terms, but consecutive to a twenty-year prison term Fowler was currently serving.[2]

---

**2.** Fowler was convicted of second-degree rape and sentenced to twenty years in the state peni-

tentiary on March 13, 1995. *See State v. Fowler,* 552 N.W.2d 92. The trial court had earlier

[¶ 8] Fowler appeals his judgment of conviction, raising the following issues:

1. Whether the trial court erred in denying Fowler's motion to dismiss in violation of SDCL 23A–44–5.1, the "180–Day Rule?"

2. Whether Fowler's due process rights were violated by the State's suppression of evidence?

## ANALYSIS AND DECISION

**[¶ 9] 1. Whether the trial court erred in denying Fowler's motion to dismiss in violation of SDCL 23A–44–5.1, the "180–Day Rule?"**

■ [¶ 10] Prior to trial, Fowler moved to dismiss, arguing that SDCL 23A–44–5.1, the "180–day rule," had been violated. The trial court denied the motion, concluding that the 180–day period had not expired, and alternatively, under Subsection 4(f) of the rule, there was good cause for the period of delay, in that the defendant "had knowledge of [the trial date] long in advance ... [and] has both actively and passively participated in preparation for the trial and the date in question for the end of June." We review the determination of whether the period has expired, as well as what constitutes good cause for delay, under a de novo standard. *State v. Cooper,* 421 N.W.2d 67, 69 (S.D.1988).

■ [¶ 11] We recently addressed SDCL 23A–44–5.1, the so-called "180–day rule," in *State v. Erickson,* 525 N.W.2d 703 (S.D. 1994), noting that the rule was created in 1985 to address ineffective scheduling practices. The rule governs the time permitted for disposition of criminal cases and is "a rule of court, not a constitutional requirement." *Id.* at 711. As such, it "stand[s] on separate legal footing than constitutional claims and requir[es] separate and distinct analysis. Violation of the '180–day rule' is not synonymous with violation of a constitutional right to a speedy trial." *Id.* (citing *State v. Hoffman,* 409 N.W.2d 373, 375 (S.D.1987)).

granted Fowler's motion to sever count one (*Fowler, supra*) from the remaining charges of the information which are the subject of this appeal.

[¶ 12] SDCL 23A–44–5.1 was completely rewritten and reenacted in 1991. Subsection 4 of the rule provides periods to be excluded in the computation of the 180 days. Specifically, subsection 4(a) excludes:

> The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial; the time from filing until final disposition of pretrial motions of the defendant, including motions brought under § 23A–8–3; motions for a change of venue; and the time consumed in the trial of other charges against the defendant; ....

Subsection 4(f) provides that other periods of delay which the court finds are for good cause shall also be excluded from the computation period.[3] *See State v. Wimberly,* 467 N.W.2d 499, 502–03 (S.D.1991). Subsection 5 provides that:

> If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the defendant shall be entitled to a dismissal with prejudice of the offense charged and any other offense required by law to be joined with the offense charged.

[¶ 13] The 180–day period commences to run from the date of the defendant's first appearance before a judicial officer on an indictment, information or complaint. SDCL 23A–44–5.1(2). Fowler first appeared June 2, 1994 on an information which included five counts involving two different victims and two separate incidents. On August 16, 1994, Fowler filed several pre-trial motions, including a motion for severance under SDCL 23A–8–3(6) and 23A–11–2 and a motion to change venue. The time from filing these motions to their final determination is to be excluded from the 180–day period under SDCL 23A–44–5.1(4)(a). The trial court granted Fowler's motions to sever and change venue on September 1, 1994 and scheduled a trial on count one to begin January 25, 1995. No date was then set for trial

3. Subsection 4(f) further provides "[a] motion for good cause need not be made within the one hundred eighty day period."

on the remaining counts. The last of Fowler's pre-trial motions was disposed of by the trial court on December 13, 1994.

[¶ 14] On January 25–26, 1995, Fowler stood trial on the count one charge. He was found guilty in that trial and was sentenced on March 13, 1995. Two days later, on March 15, 1995, a telephonic bond hearing was held. On May 25, 1995, Fowler filed pre-trial motions pursuant to his trial on counts two through five. He filed a motion to dismiss based on the 180–day rule on June 1, 1995. On June 12, 1995, the trial court ruled on the last of Fowler's motions, including denying Fowler's motion to dismiss. On June 28, 1995, Fowler was brought to trial on counts two through five of the information. By this date, 390 days had passed since Fowler's first appearance.

[¶ 15] From that 390 days, 139 days are to be excluded as time spent disposing of Fowler's pre-trial motions. Four additional days are excluded for the two trial days and the sentencing and bond hearings on the other charge that was severed. Exclusion of these periods results in 247 days from first appearance to trial on counts two through five. Fowler argues this is 67 days over the 180–day limit and entitles him to a dismissal with prejudice under SDCL 23A–44–5.1(5).

[¶ 16] The State took the position that the entire period from the date of Fowler's motion to sever the offenses, August 16, 1994, until after the trial and sentencing on the count one charge, March 13, 1995, was excludable from the 180–day period. The State argued the excludable period under SDCL 23A–44–5.1(4)(a) extends to include trial preparation time where the indictment or information included multiple counts against the same defendant which have now been severed into separate trials on defendant's motion. The trial court agreed and excluded from calculation this time period. In ruling to deny Fowler's motion to dismiss, the trial court stated that "other proceedings [to be excluded from the 180–day period] would include the trial, the motions in that trial, *preparation for that trial, and the sentencing* . . . ." (emphasis added).

[¶ 17] SDCL 23A–44–5.1 is clear and unambiguous on its face. Subsection (4)(a) specifically excludes from the 180 days "the period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time consumed in the trial of other charges against the defendant." We conclude today this language encompasses the additional 87 days between the trial court's disposition of Fowler's pretrial motions on December 14, 1994 and the date of Fowler's sentencing on the count one conviction on March 13, 1995 as "time consumed in the trial of other charges" against Fowler. To hold otherwise would unfairly penalize the State as it would be required to prepare for two separate trials against the same defendant during the 180–day period where the trial court has sought to protect that defendant's right to a fair trial by severing the charges. *See State v. Dixon,* 419 N.W.2d 699 (S.D.1988). Excluding this additional time, we determine Fowler was brought to trial 160 days following his first appearance, well within the 180–day limit.

[¶ 18] Although we have not previously addressed this particular question, our sister states have addressed similar issues and we look to their decisions for guidance. Though not binding authority on this Court, these decisions provide support for our reasoning today. In *State v. Kearns,* 245 Neb. 728, 514 N.W.2d 844 (1994)[4], the Nebraska Supreme Court calculated separately the elapsed time period regarding counts two and three from that of count one though all three counts were charged by the same amended information. Therein, the court noted, "[c]ounts II and III are separate crimes [different in time committed and amount alleged stolen], and consideration of a speedy trial in connection with those crimes is separate from any consideration of count I." *Id.* 514 N.W.2d at 847. In *State v. King,* 225 N.W.2d 337 (Iowa 1975), the Iowa Supreme Court held a defendant's right to a speedy trial under that state's statute was not violated where defendant was charged by three informations filed the same day charging defendant with three separate offenses and a second trial was properly delayed until a new jury panel was

4.   Our current version of the 180–day rule is    based upon the Nebraska rule.

selected. The Iowa court recognized that "[s]uch delay protected defendant's right and that of the State to an impartial jury. Delay which results from other proceedings concerning the defendant, including trial of other charges, should be considered in determining whether good cause exists." *Id.* at 340 (citing ABA Standards, Speedy Trial § 2.3(a) (and comment)).

[¶ 19] Besides correcting ineffective scheduling problems, "[t]he 180–day rule is a procedural device created by this Court to protect the defendant's right to a speedy trial and the integrity of the criminal justice system." *State v. Robinson,* 469 N.W.2d 376, 379 (S.D.1991). We need not address whether good cause under Subsection (4)(f) existed for the delay in this case because we find that Subsection (4)(a) of the rule, which excludes "the period of delay resulting from other proceedings concerning the defendant, including but not limited to ... the time consumed in the trial of other charges against the defendant," is sufficiently broad to encompass the period of time necessary for trial preparation which has resulted from defendant's motion of severance from other counts in the same information.

**[¶ 20] 2. Whether Fowler's due process rights were violated by the State's suppression of evidence?**

[¶ 21] The alleged suppressed evidence in the present case involved a pair of statements the victim had given to police chief Ensley in May 1994. Fowler claims on appeal these statements demonstrate the victim changed her recollection of what occurred in the North Sioux City police station in the early morning hours of July 7, 1991. As credibility was a key issue in this case, Fowler claims this evidence would have been both favorable and material to his defense.

[¶ 22] "Suppression of evidence by the prosecution goes directly to the fundamental fairness of the trial, the basic due process rights of the accused." *State v. Steele,* 510 N.W.2d 661, 665 (S.D.1994). However, not every case where the State has suppressed evidence results in a violation of a defendant's due process rights. This Court has set forth a four-part test for determining whether a due process violation of defendant's rights has occurred where the prosecution has suppressed evidence. *Ashker v. Solem,* 457 N.W.2d 473, 477 (S.D.1990). In that case, we stated that if the following four questions can be answered affirmatively, the defendant's due process rights have been violated and a new trial must be granted:

1. Was the defense unaware of the evidence?

2. Is the evidence favorable to the defense?

3. Is the evidence material to the defense?

4. Did the defense make a request for the evidence?

*Id.* In applying this test, we have stated that "[e]vidence is favorable where it creates a reasonable doubt that did not otherwise exist.... [and] 'material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Steele,* 510 N.W.2d at 665 (citing *Ashker,* 457 N.W.2d at 477 and quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)).

[¶ 23] Fowler attached to his brief to this Court what he claims are selected pages from transcripts of these two interviews. However, they are not identified by date, nor by speaker except with initials, and portions of the statements appear to have been redacted. These partial transcripts are not part of the settled record in this case. It is the appellant's responsibility to provide an adequate record for appeal to show the existence of a claimed error. *Fanning v. Iversen,* 535 N.W.2d 770, 776 (S.D.1995); *Baltodano v. North Cent. Health Services,* 508 N.W.2d 892, 894 (S.D.1993).

[¶ 24] We have stated we must be convinced, from a review of the entire record that had the suppressed evidence been made available, the jury probably would have reached a different verdict. *Ashker,* 457 N.W.2d at 478. We are unable to reach such a conviction without the entire record before

us for review. Therefore, this issue is waived.

[¶ 25] We affirm.

[¶ 26] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 27] SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I concur specially on issue 1 because "the time consumed in the trial of other charges against the defendant" should be excluded, especially when separate trials result from the granting of defendant's motion for severance. However, the period of time "necessary for trial preparation" is clearly included therein and, if the state needs more, it should be required to show good cause *before* the lapse of 180 days. SDCL 23A–44–5.1(4)(a). The point being that trial preparation is inherently included in the 180 days and cannot be the basis for "good cause" to cover up delay or oversight.