1997 SD 22

**Bradley Dean BLACK, Appellant,**

v.

**Joseph P. CLASS, Warden, South Dakota State Penitentiary, Appellee.**

**No. 19599.**

Supreme Court of South Dakota.

Argued Jan. 15, 1997.

Decided Feb. 26, 1997.

Rita Allen of Hagen, Wilka & Archer, P.C., Sioux Falls, for Appellant.

Mark Barnett, Attorney General, Frank E. Geaghan, Assistant Attorney General, Pierre, for Appellee.

GILBERTSON, Justice.

[¶ 1] Bradley Dean Black (Black) appeals the denial of his application for a writ of habeas corpus. We reverse and remand for a new trial.

### FACTS AND PROCEDURE

[¶ 2] The facts are detailed in *State v. Black*, 494 N.W.2d 377 (S.D.1993) (*Black I* ). In that case we affirmed Black's conviction for the first-degree murder of Robert Earl Hymore (Hymore). Black was sentenced to life imprisonment without possibility of parole. Black's sole claim on direct appeal was that the trial court erred in refusing to instruct the jury on manslaughter as a lesser-included offense to the first-degree manslaughter charge. We held that the trial court did not err in refusing Black's lesser-included offense instruction. *Black I*, 494 N.W.2d at 381. However, the Court was divided on this issue and Black's petition for rehearing was granted. On rehearing, Black's conviction was once again affirmed. *State v. Black*, 506 N.W.2d 738 (S.D.1993) (*Black II* ). Therein, we held that although the trial court had erroneously determined that first-degree manslaughter did not pass the legal prong of the two-pronged lesser-included offense test, and that there was sufficient evidence to give such an instruction under the factual prong of the test, "a rational jury would have found the evidence supported only the offense of which he was convicted." *Black II*, 506 N.W.2d at 744.

[¶ 3] We now review Black's appeal from the denial of his application for writ of habeas corpus. He raises four separate issues in this appeal:

1. Whether the prosecution's nondisclosure of Hymore's criminal record violated Black's due process rights entitling him to habeas corpus relief?

2. Whether the habeas court abused its discretion in excluding Hymore's rap sheet at the habeas corpus hearing?

3. Whether the failure to instruct the jury on first-degree manslaughter at Black's murder trial violated Black's due process rights and rights to a jury trial under the United States and South Dakota constitutions?

4. Whether defense counsel was ineffective in failing to interview and call as witnesses Gary Dodd and Steven Dodd, and by eliciting damaging testimony regarding Kelli Clark and Joe Ebert's relationship?

## SCOPE AND STANDARD OF REVIEW

[¶ 4] The remedy in a habeas proceeding is in the nature of a collateral attack on a final judgment, therefore, our scope of review is limited. *Jenner v. Leapley*, 521 N.W.2d 422, 425 (S.D.1994); *Gregory v. Solem*, 449 N.W.2d 827, 829 (S.D.1989). It is not a substitute for direct review. *Loop v. Class*, 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191.

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction.

*St. Cloud v. Leapley*, 521 N.W.2d 118, 121 (S.D.1994) (*St. Cloud III*) (internal citations omitted).

[¶ 5] On habeas review, the petitioner has the initial burden to prove by a preponderance of the evidence that he is entitled to relief. *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 1025, 82 L.Ed.

1461, 1469 (1938); *Loop*, 1996 SD 107, ¶ 14, 554 N.W.2d at 191; *Two Eagle v. Leapley*, 522 N.W.2d 765, 768 (S.D.1994). The habeas court's findings are given "considerable deference" and we will not reverse these findings unless they are clearly erroneous. *St. Cloud III*, 521 N.W.2d at 121; *McCafferty v. Solem*, 449 N.W.2d 590, 592 (S.D.1989); *Satter v. Solem*, 422 N.W.2d 425 (S.D.1988), *cert. denied sub nom. Rist v. Satter*, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989).

## ANALYSIS AND DECISION

[¶ 6] **1. Whether the prosecution's nondisclosure of Hymore's criminal record violated Black's due process rights entitling him to habeas corpus relief?**

[¶ 7] Black's defense at trial was one of self-defense to an assault. He claimed that on December 6, 1990, the victim, Hymore, made homosexual advances toward him which escalated into a struggle over a gun in Black's vehicle. According to Black, he gained control of the gun and, although he did not later recall it, pulled the trigger firing four shots into the back of Hymore's head. Both men had been drinking and gambling in a bar prior to the fatal shooting, and exited the bar together to go target shooting. *Black I*, 494 N.W.2d at 378.

[¶ 8] Prior to trial, during a February 13, 1991 motions hearing, Black's defense counsel requested Hymore's criminal records as part of discovery materials in preparing Black's defense. Black hoped to show at trial Hymore's propensity for violent behavior when he was intoxicated, evidence he believed would support his version of the facts and his proffered defense. The State objected to the request on grounds of relevancy. The trial court expressed some agreement at first, but orally ordered the State to produce the records along with other discovery items requested by Black's attorney. The then-state's attorney assured the trial court it could obtain Hymore's criminal records with reasonable effort.[1]

---

1. We would note that the state's attorney who prosecuted this case is no longer in office as

Lincoln County State's Attorney.

[¶ 9] When earlier addressing a request for similar type records of another witness in the case, the state's attorney had informed the trial court it needed a specific, written order directing it to provide the information. The state's attorney noted this written order was required due to a change in the system which the State referred to as a "Triple I."[2] The state's attorney informed the trial court the Triple I required the State to make certifications to gain access to information in the State computer system. The trial court stated that written order would be done "on a separate sheet." At the conclusion of the hearing, the trial court orally ordered the state's attorney to deliver all discovery materials addressed during the February hearing to Black by March 1. At no time did the State attempt to appeal this order of the trial court.

[¶ 10] Regardless of these statements on the record, no written order was prepared immediately following the February hearing and no discovery material regarding Hymore's criminal records was forthcoming from the State. Black moved for dismissal or continuance based on alleged lack of good faith by the State in supplying him with discovery material in a timely manner. At a March 7, 1991 hearing, the trial court denied Black's motion for dismissal, but granted his motion for continuance, ruling that trial in the matter would commence May 13, 1991. Four days before trial, on May 9, the trial court signed the findings, conclusions, and order submitted to it by the state's attorney regarding the parties' pre-trial motions. Paragraph 7 of that order provided: "That the Motion for Discovery by the Defendant be, and the same hereby is, denied, and *the Court's prior Orders based upon the hearing on February 13, 1991,* together with the original Discovery Order entered by this Court on its own motion *remain in effect* [.]" (emphasis added).

[¶ 11] Nevertheless, Hymore's criminal records were not delivered to Black's defense counsel prior to the conclusion of his jury trial. In fact, Hymore's criminal records

were not delivered at all by the State. Hymore's criminal record and rap sheet were obtained by Black's habeas counsel independently of the State in preparation for the habeas hearing, four and one-half years after Black's trial for first-degree murder.

[¶ 12] Black's defense counsel testified at the habeas hearing that, throughout the trial, he believed Hymore's criminal records included nothing more than one or two driving under the influence (DUI) convictions and that Hymore had recently completed a jail sentence for DUI and been released. A private investigator assigned to assist in Black's defense was advised by a Lincoln County sheriff's deputy that Hymore was a "passive man that would avoid confrontations." In fact, Hymore's records demonstrated the following:

1. In 1981, in Florida, Hymore broke a front window to gain entry to his wife's home when entry was refused him. On that same day, while intoxicated, Hymore fired shots in his wife's neighborhood, a busy residential area. When officers attempted to talk to him, Hymore became abusive, used profanity and attempted to kick out the window of the police vehicle after being placed therein. During booking procedures for the above, Hymore assaulted a police officer with his belt.

2. In 1982, Hymore was found guilty in Nebraska of intentional or reckless damage to another's property and disturbing the peace. Abuse of alcohol was involved and Hymore was ordered by the court to undergo alcohol evaluation and treatment and attend AA meetings as a condition of his probation.

3. In 1986, Hymore was charged with burglary resulting from his entry into a home in Sioux Falls, South Dakota in 1986. Once inside, he attempted to remove the pants of the woman who resided there, whom Hymore had just given a ride home. Hymore left when

---

**2.** Interstate Identification Index. According to the state's attorney who prosecuted this case, the Triple I Compact requires a written order be on file to show some objective demonstrable basis for accessing the computer system that houses criminal records of individuals in all fifty states.

she said she was going for help. He was found guilty of this charge.

4. He was also arrested in Sioux Falls in 1986 and 1987 for disturbing the peace; the police reports for both of these arrests indicate he was extremely intoxicated at the time. Hymore was found guilty in both cases.

5. Hymore's most recent arrest and conviction indicated in these records was in 1989 in Sioux Falls for disturbing the peace. The police record indicates he was disorderly and very abusive. This is just one year prior to the fatal shooting underlying this appeal.

[¶ 13] Black's defense counsel testified at the habeas hearing that he felt the development of Hymore's criminal history, including his violent behavior when consuming alcohol, and presentation of such to the jury were key to Black's defense at trial. According to Black's counsel, presentation of such evidence also would have been used to counter a witness for the prosecution who described Hymore as quiet and nonconfrontational when intoxicated.

[¶ 14] Although attorneys for the parties argued at the habeas hearing as to who was responsible for submitting a written order for the court-ordered production of discovery materials and whether the order that was finally submitted was sufficient,[3] there is no question the requested records were not supplied to Black in time for his use at trial in violation of a direct, oral court order and only the State had access to these records.

[¶ 15] In *Brady v. Maryland,* the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). In *United States v. Bagley,* the Supreme Court revisited the issue and held that favorable evidence is material, and constitutional error results from its suppression by the government, "if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985). *See also Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490, 505 (1995).

[¶ 16] We recently addressed the four-part test for determining whether a due process violation has resulted from the prosecution's suppression of evidence in *State v. Fowler,* 1996 SD 78, 552 N.W.2d 92 (*Fowler I* ) and *State v. Fowler,* 1996 SD 79, 552 N.W.2d 391 (*Fowler II* ). We stated that if the following four questions can be answered affirmatively, the defendant's due process rights have been violated and a new trial must be granted:

1. Was the defense unaware of the evidence?

2. Is the evidence favorable to the defense?

3. Is the evidence material to the defense?

4. Did the defense make a request for the evidence?

*Fowler II,* 1996 SD 79, ¶ 22, 552 N.W.2d at 395 (citing *Ashker v. Solem,* 457 N.W.2d 473, 477 (S.D.1990)).

[¶ 17] Our review of the record reveals that at the outset, questions one and four can be answered affirmatively. There is no question that defense counsel for Black made a request for the evidence as demonstrated by the transcript of the February 13, 1991 motions hearing. Further, there is no question the defense was unaware of Hymore's criminal history. The private investigator working on Black's behalf testified at the habeas hearing that he had been led to believe by sheriff's deputies that Hymore's criminal past included only one or two DUI convictions and nothing more serious than that, and that Hymore was passive and non-confrontational when drinking.

[¶ 18] In defining what is favorable and material under questions two and three of

---

3. For the record, we note that here, where the written order was by the State's own admission for its protection in case of a federal audit of its

Triple I Compact compliance, it was the State's obligation to submit the order.

the four-part test, we have stated that "[e]vidence is favorable where it creates a reasonable doubt that did not otherwise exist .... [and] 'material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Fowler II*, 1996 SD 79 ¶ 22, 552 N.W.2d at 395 (quoting *State v. Steele*, 510 N.W.2d 661, 665 (S.D.1994) and citing *Ashker*, 457 N.W.2d at 477; *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494). *See also Kyles*, 514 U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506 (reasonable probability of a different result is shown when the State's evidentiary suppression undermines confidence in the outcome of the trial). In *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995), the court held a reasonable probability of a different result is possible only if the suppressed evidence was itself admissible or would have led to admissible evidence. *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir.1991); *United States v. Kennedy*, 890 F.2d 1056, 1059–60 (9th Cir. 1989), *cert. denied*, 494 U.S. 1008, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990).

[¶ 19] During its case-in-chief, the State called a witness, Art Newman, to bolster the victim's reputation. Newman testified that he had known Robert Hymore for seven years, that he would see him in bars in Sioux Falls, and that sometimes they would drink together. He also stated he would drink with Hymore in Hymore's home. He further testified that while in Hymore's home he had seen a number of medals awarded Hymore before he retired from the Army as a staff sergeant. When asked by the prosecution if Hymore ever made a homosexual pass at him or if he ever noticed any behavior which would lead him to suspect Hymore was homosexual, Newman answered in the negative. Finally, he answered the following questions on direct examination by the State:

Q: Do you recall, did [Hymore] have a drinking problem?

A: Yeah, I would say so.

Q: Did he have any other kind of problems besides alcohol?

A: No.

Q: Just what would come along with being a heavy drinker?

A: (Nods affirmatively).

Q: Did you ever feel personally threatened, at any time during the seven years you knew him, with Mr. Hymore when he had been drinking?

A: No.

Q: Did he have a temper?

A: No.

Q: Did he ever really get out of line when he had a lot to drink and you were present?

A: No. He would get up and leave. Wouldn't say much.

[¶ 20] This introduction of evidence of Hymore's character by the prosecution is prohibited by SDCL 19–12–4 which provides, in pertinent part:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except: ....

(2) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, *or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor* [.]

(emphasis added). At the time the State called Art Newman to testify to the above, Black had not presented any evidence nor had his defense counsel made an opening statement. Thus, the State's adducement of evidence of Hymore's character for peacefulness when he was drinking does not fall within the two limited exceptions, available to the prosecution in this case, to the general rule that such evidence is inadmissible. The State cannot introduce evidence of a victim's good character unless and until the defendant has "opened the door" by first presenting evidence of the victim's bad character.

[¶ 21] Other courts have agreed that such evidence does not belong in the prosecution's main case. *See State v. Hicks,* 133 Ariz. 64, 649 P.2d 267, 271–2 (1982); *State v. Rivas,* 129 Idaho 20, 921 P.2d 197, 202–04 (1996); *People v. Edwards,* 139 Mich.App. 711, 362 N.W.2d 775, 778–79 (1984); *State v. Weinberger,* 204 Mont. 278, 665 P.2d 202, 216–17 (1983). "It is well settled that the prosecution cannot, in the first instance and as part of its evidence in chief, or before the character of the deceased has been attacked by the defense, introduce evidence of the reputation of the deceased for peaceableness or prove that he was a quiet and orderly citizen." 40 AmJur2d *Homicide* § 308 (1968).

[¶ 22] In the present case, there is no record that an objection was made by Black's defense counsel to the State's introduction of such testimony. Where the defendant has failed to object to the state's presentation of such evidence and where no prejudice has been shown, some courts have refused to reverse a conviction, holding the error harmless. *See Weinberger, supra.* However, these courts were not also addressing an alleged violation of the *Brady* rule.

[¶ 23] Here, the line of questioning by the prosecution goes directly to the nature of the discovery material which was suppressed by the State and to Black's defense of self-defense against a violent attack by Hymore following Hymore's drinking. Black's defense attorney had nothing with which to counter this testimony on cross-examination. Had the State delivered Hymore's criminal records to Black as it was ordered to do by the trial court, Black would have been able to use this information during cross-examination of this witness, as well as support his theory of defense. This evidence was crucial as without it, the jury was provided only Black's unsupported testimony as to Hymore's potential for violence when intoxicated. The information contained in Hymore's criminal records and rap sheet provided independent evidence which Black could have used to establish his claim of Hymore's violent character when intoxicated, after the State opened the door. Further, one incident described in these records involved an attempted forced sexual attack by the de-

ceased. Certainly Black was prejudiced by the suppression of this material. Under these circumstances, we find a violation of the *Brady* rule occurred in this case. *See Kyles,* 514 U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506 (stating '[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." (citing *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375, 87 L.Ed.2d 481)).

[¶ 24] "This court has consistently held that a defendant is not guaranteed a perfect trial 'but every accused, innocent or guilty, is entitled to a fair trial.'" *State v. Raymond,* 540 N.W.2d 407, 410 (S.D.1995) (quoting *State v. Logue,* 372 N.W.2d 151, 158 (S.D. 1985) and citing *State v. Bennis,* 457 N.W.2d 843, 847 (S.D.1990)). Before society can force a man to spend the rest of his life in prison, it is not too much to ask that he be allowed access to relevant information with which to argue to society he is not guilty of that charge. We agree with the United States Supreme Court's rationale in *Williams v. Florida* that:

> The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for ... rule[s], which [are] designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

*Williams v. Florida,* 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446, 450 (1970) (footnote omitted).

[¶ 25] The state's attorney's failure to obey a direct order of the court and deliver the requested highly relevant discovery material to Black prior to trial, coupled with its improper bolstering of the victim's reputation as a "quiet drunk" in its case-in-chief, constituted a violation of Black's due process rights under the *Brady* rule and deprived Black of

a fair trial.[4] Accordingly, we reverse and remand for a new trial.

**[¶ 26] 2. Whether the habeas court abused its discretion in excluding Hymore's rap sheet at the habeas corpus hearing?**

[¶ 27] In *St. Cloud v. Class,* 1996 SD 64, ¶ 14, 550 N.W.2d 70, 74 (*St. Cloud IV*) we stated we review a habeas court's decision whether to admit evidence under an abuse of discretion standard of review. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Henry,* 1996 SD 108, ¶ 10, 554 N.W.2d 472, 473. "Under this standard, 'not only must error be demonstrated, but it must also be shown to be prejudicial error.'" *State v. Spiry,* 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (quoting *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976)). We begin with the presumption that the trial court's evidentiary rulings are correct. *State v. White,* 1996 SD 67, ¶ 19, 549 N.W.2d 676, 681.

 [¶ 28] The habeas court refused to admit Hymore's rap sheet due to Black's failure to lay the proper foundation to assure its authenticity. That ruling is supported by the record. Also, we note that there was no prejudice to Black, since he was permitted to introduce written copies of Hymore's convictions. We hasten to point out however, that since this was a proceeding to the court, rather than a jury, the better practice may have been to permit introduction or introduction under seal. In most cases that would afford a more complete record for appellate review and it surely would have been helpful to us in our review of the suppression issue. *See State v. Bailey,* 1996 SD 45, ¶ 34, 546 N.W.2d 387, 394 (noting when the matter is to be determined by the court, rather than a jury, the presumption is that improperly admitted evidence is disregarded). Under the circumstances, we find no prejudice would have occurred to the State in admitting Hymore's rap sheet where the court can "draw its own logical inferences from its review of those documents." *Id.*

## CONCLUSION

[¶ 29] In *Gregory v. Solem,* 449 N.W.2d 827, 833 (S.D.1989) we set forth the purpose of a criminal jury trial:

> To the greatest extent possible, all issues which bear on the criminal charge should be determined at trial; the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that the trial be as free of error as possible is thoroughly desirable. The trial on the merits is to be the 'main event,' rather than a 'tryout on the road' for what will later be the determinative habeas hearing. *Wainwright v. Sykes,* 433 U.S. 72 at 90, 97 S.Ct. 2497 at 2508, 53 L.Ed.2d 594 at 610 (1977).

Unfortunately that did not happen here because a court order was not complied with. The result? The defendant has been incarcerated since 1991 for a death which may or may not be found to be justifiable self-defense when all relevant facts are considered. Prosecutors and law enforcement will be required to again put forth substantial time to

---

4. Although our analysis on this issue focuses on the effect the suppressed evidence had upon the trial rather than the reason for its suppression, we would note that at the habeas hearing the then-prosecutor justified his failure to provide this evidence in violation of a court order by offering "I am not a gopher [sic] for the defense" and it "got shoved to the side" because he was working on another case. The prosecutor also claimed there was no written court order "directing me to go over and get it." This final claim is most curious in light of the fact the trial court, prior to trial, signed a proposed order prepared by that prosecutor which stated in part, "the Court's prior Orders based upon the hearing on February 13, 1991 ... remain in effect." These justifications offered by the prosecutor also contradict his statement at the habeas hearing that "[w]e have always been a lot more liberal on our disclosure I think than many other prosecution offices in the state of South Dakota." The habeas record does not reflect whether this prosecutor was aware of the contents of the rap sheet prior to trial.

prepare for retrial as will the defense. The public is forced to underwrite the expense of a re-trial.

[¶ 30] The United States Supreme Court has stated "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *U.S. v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399–2400 49 L.Ed.2d 342, 352 (1976). "Such disclosure will serve to justify trust in the prosecutor as 'the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Kyles*, 514 U.S. at ——, 115 S.Ct. at 1568, 131 L.Ed.2d at 509 (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). Here, the question of disclosure was never even in doubt. The material was requested by the defense, ordered by the trial court and never produced by the prosecution.

[¶ 31] Our disposition of the above issues renders unnecessary any discussion of Black's other issues on appeal. We reverse and remand for a new trial.

[¶ 32] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 33] SABERS, Justice, concurs in part, concurs specially in part.

[¶ 34] In relation to ¶ 4, I write specially to point out that habeas corpus reaches jurisdictional error, constitutional error, all "causes" listed in SDCL 21–27–16(1) through (7) and other illegal detentions, including those resulting from failure to comply with "substantive statutory procedure." *Petrilli v. Leapley*, 491 N.W.2d 79, 86 (S.D.1992) (Sabers, J., concurring specially); *O'Connor v. Leapley*, 488 N.W.2d 421, 425 (S.D.1992) (Sabers, J., concurring specially); *Podoll v. Solem*, 408 N.W.2d 759, 761 (S.D.1987) (Sabers, J., concurring specially); *Goodroad v. Solem*, 406 N.W.2d 141, 146 (S.D.1987) (Sabers, J., concurring specially); *Security Sav. Bank v. Mueller*, 308 N.W.2d 761, 762–63 (S.D.1981).