PEOPLE v EDWARDS

Docket No. 68995. Submitted May 8, 1984, at Grand Rapids.—Decided
October 31, 1984.

Anthony Edwards was convicted of first-degree murder and fel-
ony-firearm, Kalamazoo Circuit Court, John E. Fitzgerald, J.
Defendant appealed, alleging *inter alia* that the trial court
erred by refusing to allow the defense to rehabilitate the
testimony of a witness with evidence of prior consistent state-
ments and by allowing testimony regarding the character of
the victim during the prosecution's case in chief. *Held:*

1. Evidence of a prior consistent statement may be allowed to
rehabilitate a witness whose testimony has been impeached by
a charge of recent fabrication. Adoption of the Michigan Rules
of Evidence did not preclude the use of prior consistent state-
ments for such a purpose. Exclusion of the rehabilitating
evidence was improper and, in this case, was not harmless.

2. Admission of the prosecution witnesses' testimony regard-
ing the alleged peaceful character of the victim was improper.
Such evidence is admissible in a homicide case only to rebut
evidence that the victim was the aggressor and that the defen-
dant acted only in self-defense.

3. The evidence was sufficient to show the presence of pre-
meditation and deliberation.

4. On the basis of the evidence presented the defendant was
entitled to an instruction on voluntary manslaughter.

Reversed and remanded.

1. EVIDENCE — PRIOR CONSISTENT STATEMENT — REHABILITATION OF
WITNESS.

The use of a witness's prior consistent statements for limited
purposes was not abrogated by the adoption of the Michigan

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 81 Am Jur 2d, Witnesses §§ 648, 649.
Admissibility, for purpose of supporting impeached witness, of prior
statements by him consistent with his testimony. 75 ALR2d 909.
[3] 40 Am Jur 2d, Homicide § 301 *et seq.*
Admissibility of evidence as to other's character or reputation for
turbulence on question of self-defense by one charged with as-
sault or homicide. 1 ALR3d 571.

Rules of Evidence; although generally not admissible as substantive evidence, a prior consistent statement may be admitted to rehabilitate a witness whose testimony has been impeached by a charge of recent fabrication.

2. EVIDENCE — PRIOR CONSISTENT STATEMENT — REHABILITATION OF WITNESS.

A prior consistent statement may be used to rehabilitate a witness whose testimony has been impeached if (1) the impeachment of the sworn testimony attacked the witness as having had a motive for changing or falsifying his testimony so as to have been of recent contrivance or fabrication, and (2) if the earlier consistent statement was given at a time prior to the existence of any fact which would motivate bias, interest or corruption.

3. HOMICIDE — EVIDENCE — CHARACTER EVIDENCE — AGGRESSORS.

Evidence of a victim's character may be presented by the prosecution in a homicide case only to rebut evidence that the victim was the aggressor and that the defendant was acting only in self-defense (MRE 404[a][2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Edward M. Hendrie,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev),* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and C. J. HOEHN,* JJ.

PER CURIAM. Defendant appeals as of right from jury convictions for first-degree murder, MCL 750.316; MSA 28.548, and felony-firearm, MCL 750.227b; MSA 28.424(2). He was sentenced to serve terms of life and 2 years' imprisonment.

Defendant's convictions arose from the shooting death of Ronnie White at a party in Kalamazoo, Michigan, during the early morning hours of July

* Circuit judge, sitting on the Court of Appeals by assignment.

24, 1981. White was with his brother, Frank Woodson, and some young women standing beside Woodson's car when defendant and a companion, Hanson Jones, pulled into the driveway. Defendant got out of the car, sat on the trunk and began talking to no one in particular about where the action was.

Words were exchanged between defendant and White. Defendant pulled out a gun and fired a few shots at White's feet, after which he put the gun back into his pants and they began fighting.

When the fighting began between defendant and White, White's brother, Woodson, tried to break it up but Jones prevented him from doing so. This led to fighting between Woodson and Jones which culminated in Jones pulling a gun and firing a number of shots at Woodson as Woodson ran away.

By this time, the fighting between defendant and White had escalated, with defendant taking a baseball bat from his car and White responding by picking up a wooden board. After defendant and White had hit each other with these weapons for a while, shots were heard and Jones ran up to White and defendant.

At this point, the testimony of the many witnesses became inconsistent. A number of eyewitnesses testified that defendant yelled to Jones, "Bring me the gun, let me shoot this mother fucker", after which Jones gave defendant the gun and defendant shot White to death. Other eyewitnesses testified that it was Jones and not defendant who shot White. One of these witnesses subsequently corrected himself and stated that he was sure that it was defendant and not Jones who had shot White. Some of the witnesses also testified that after White had been shot defendant picked up his baseball bat and hit White in the head as

he lay on the ground, prior to driving away with Jones. Others testified that it was Jones who hit White with the bat after he had been shot.

Hanson Jones testified on behalf of defendant. He testified that when he had finished fighting with Woodson, he came back to defendant because he wanted to leave. Before they could go, Jones testified, the gun accidentally fired while he was holding it and the bullet hit White. Jones stated that he never gave the gun to Edwards. During direct examination, Jones admitted that at his own trial for the murder of White (at which he was convicted), he had testified that defendant had asked for the gun and that he had given it to defendant.

On cross-examination, Jones testified that he had not previously told the police that he had shot White. Jones again admitted that he had previously testified under oath that he had given the gun to defendant and that he had then heard the gun fire. He admitted that he had also testified that he knew the gun was loaded when he gave it to Edwards and that he had previously testified that he did not know who had shot the gun. Defendant's attempts to present evidence of prior consistent statements were denied by the trial court.

On appeal, defendant has raised five issues, two of which require reversal. He first argues that the trial court committed reversible error by refusing to allow the defense to rehabilitate the testimony of Hanson Jones with evidence of prior consistent statements. The trial court refused to allow this testimony because it believed that, while this evidence would have been admissible under earlier Michigan case law, the Michigan Rules of Evidence had "pre-empted" the field and did not provide for the admission of prior consistent state-

ments, which were hearsay. The prosecution, on appeal, apparently concedes that the trial court's reasoning was incorrect, but argues that the result was nevertheless correct because the defense was attempting first to impeach and then rehabilitate its own witness and because the testimony of two of the eight proffered witnesses would only have revealed consistent statements made after Jones had a clear motive to lie.

We agree with defendant that adoption of the Michigan Rules of Evidence did not abrogate case law which permitted the use of prior consistent statements for limited purposes. In *Brown v Pointer,* 390 Mich 346, 351-352; 212 NW2d 201 (1973), the Supreme Court stated that, although consistent statements of a witness are generally not admissible as substantive evidence, they were admissible "for the purpose of supporting the credibility of a witness". Among the admissible purposes is rehabilitation of a witness impeached by a charge of recent fabrication. *People v Washington,* 100 Mich App 628, 632; 300 NW2d 347 (1980); *People v Miniear,* 8 Mich App 591; 155 NW2d 222 (1967), *lv den* 380 Mich 758 (1968). This Court has repeatedly accepted the application of this rule even after the Rules of Evidence were adopted. *People v Squire,* 123 Mich App 700, 706; 333 NW2d 333 (1983); *Palmer v Hastings Mutual Ins Co,* 119 Mich App 271, 273-274; 326 NW2d 476 (1982), *lv den* 417 Mich 1083 (1983); *People v Davis,* 106 Mich App 351, 355; 308 NW2d 206 (1981), *lv den* 414 Mich 947 (1982); *People v De-Leon,* 103 Mich App 225, 233; 303 NW2d 447 (1981), *lv den* 412 Mich 935 (1982); *People v Washington, supra.* Since this purpose is to *rebut* a charge of recent fabrication, the prior consistent statement is not being admitted to prove the truth of the matter asserted. It is, therefore, unnecessary

to have a specific exception to the hearsay rule to permit use of such statements. The trial court thus incorrectly excluded the evidence on this ground.

The prosecution, however, argues that the evidence was nevertheless properly excluded because defendant deliberately impeached his own witness, Hanson Jones, and then sought to rehabilitate Jones because of his own impeachment. This assertion is not supported by the record. Defense counsel clearly raised the issue of Jones's previous inconsistent statement to lessen the impeaching impact of that statement; the defense certainly did not wish for the jury to *disbelieve* Jones's in-court testimony that he, and not defendant, had killed White.

The prosecution also argues that the testimony of two of the eight proposed witnesses would have been properly excluded by the trial court even under a correct assessment of the recent fabrication rule because their testimony would only have established that Jones made a consistent statement after he had a motive to lie. Michigan permits the use of prior consistent statements to rehabilitate an impeached witness if "(1) the impeachment of the sworn testimony attacked the witness as having had a motive for changing or falsifying his testimony so as to have been of recent contrivance or fabrication, and (2) if the earlier consistent statement was given at a time prior to the existence of any fact which would motivate bias, interest, or corruption". *People v Washington, supra,* p 633, quoting *Brown v Pointer,* 41 Mich App 539, 548; 200 NW2d 756 (1972). In this case, the prosecution's impeachment clearly implied that Jones had changed his story to claim that he, rather than defendant, had killed White only because Jones had already been convicted of the murder and had "nothing to lose".

Furthermore, the prosecutor explicitly argued this theory during closing argument. Thus, the first prong of this test is met. The question then is whether defendant's offer of proof established that all eight of his witnesses would have testified to prior statements which preceded this motive to lie.

The prosecution concedes that six of the eight witnesses fall within the definition of the rule. It argues, however, that two do not. We agree with the prosecution as to Detective Reggie Kissinger of the Kalamazoo Police Department; according to defendant's offer of proof, Detective Kissinger could only have repeated a statement made by Jones two days before defendant's trial and well after Jones had already been convicted and sentenced. However, we find that, according to the offer of proof, attorney William K. Murphy should have been permitted to testify as his testimony would have included an inculpatory statement made by Jones on the date of Jones's and defendant's joint preliminary examination.

We cannot consider the trial court's improper exclusion of the rehabilitating testimony of seven witnesses to be harmless in this case. The evidence at trial showed that there was great confusion as to whether defendant or Jones shot White. Jones himself admitted killing White. The evidence of statements admitting the killing made by Jones prior to his own trial for killing White might well have persuaded at least one juror to vote for acquittal.

We also find that the trial court committed reversible error by permitting the prosecution to present evidence of Ronnie White's "peaceful" character during the prosecution's case in chief. During the direct examination of prosecution witnesses Frank Woodson, Patricia Woodard, Keith Palm, and Wanda Mathews, the prosecutor elicited

testimony that the witnesses had known White for a long time, that none of them had seen White fight before, and that none of them had ever seen him with a gun or knife before. Defense counsel did not object to these questions during Woodson's testimony, but objected twice during Patricia Woodard's testimony and once again during Keith Palm's testimony. No objection was raised to the last witness's testimony. The objections were overruled after the prosecutor stated:

"Your Honor, what we have here is a possibility of a mutual fight. I think it's very important that it's clear that the character of this victim was one that was not violent, and if there was any question of self-defense, this is the type of person that would not have started the fight and, in fact, would not have been involved in the fight."

The court did prevent the prosecutor from repeating one question on the ground that it was repetitious, but at no point did the court respond to defense counsel's objection that the testimony was improper under the Rules of Evidence.

On appeal, the prosecution urges us to focus only on the error committed by the trial court in admitting Patricia Woodard's testimony. We disagree. If there was error, this error extended to the testimony of Woodard, Palm, and Mathews. Contrary to the prosecution's assertion, the trial court did not rule in favor of defendant during Palm's testimony. We also do not believe that defense counsel's failure to raise a fourth objection waived defendant's right to have this Court consider Mathews's testimony under these circumstances.

We agree with defendant that admission of this testimony was improper. Evidence of a victim's

character may be presented by the prosecution in a homicide case only to rebut evidence that the victim was the first aggressor and that the defendant was acting only in self-defense. MRE 404(a)(2); *People v McIntosh,* 62 Mich App 422, 429; 234 NW2d 157 (1975), *aff'd in part, rev'd in part,* 400 Mich 1; 252 NW2d 779 (1977). The possibility that defendant might have raised a self-defense claim does not excuse the admission of this evidence, either. *People v McIntosh, supra.*

The admission of this testimony cannot be considered harmless, even though defendant failed to object to Woodson's evidence of White's peaceful character. It is possible that the jury would not have paid much attention to a single witness's statement that White had never fought; we cannot agree that this testimony from three more witnesses would have been ignored by the jury. The stress on White's peaceful character may well have created sympathy for the victim and distracted the jury from the defense actually presented by defendant—that Jones, and not defendant, had shot and killed White. We therefore find that this error also mandates reversal.

Defendant also argues that there was insufficient evidence produced at trial to show the presence of premeditation and deliberation. After reviewing the evidence in the light most favorable to the prosecution, *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885 (1980), we disagree. Several witnesses testified that defendant asked Jones for his gun so that defendant could shoot White. The witnesses testified that defendant shot White to death when White tripped while attempting to flee. This testimony could have led a rational trier of fact to conclude beyond a reasonable doubt that defendant had sufficient time to take a "second look" and had in

fact premeditated and deliberated before shooting White.

Defendant raises two other issues, which we will briefly address to provide guidance on retrial. On the basis of the evidence adduced in this trial, defendant was entitled to an instruction on voluntary manslaughter. *People v Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978); *Maher v People,* 10 Mich 212, 219 (1862). Therefore, if the evidence on retrial indicates that the shooting occurred at the conclusion of a long and violent fight between defendant and White, and if defendant requests an instruction on voluntary manslaughter, the jury is to be so instructed. In addition, if the issue of witness Al Davis's being a res gestae witness is again raised, the trial court is to follow the procedures outlined in *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979), in determining whether Davis was such a witness and whether the prosecution must produce him at trial.

Reversed and remanded.