# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 21, 2014

Plaintiff-Appellee,

v

No. 315291
Chippewa Circuit Court
LC No. 11-000680-FC

RANDY LANCE BRAUN,

Defendant-Appellant.

Before: MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right from his conviction following a jury trial of nine counts of first-degree criminal sexual conduct (CSC I), seven for violating MCL 750.520b(1)(a) (victim under age 13) and two for violating MCL 750.520b(1)(b) (victim between age 13 and age 16 with attendant circumstances). The court sentenced defendant on all nine counts to concurrent prison terms of 25 to 75 years. He was also required to register as a sex offender. We affirm.

The victims in this case were defendant's stepdaughters, EC, EJ, and LS. At trial, the victims testified that defendant regularly molested them up until they entered puberty and that the sexual assaults often involved vaginal penetration.

## I. EVIDENTIARY DECISIONS

Defendant first argues that the court made several erroneous evidentiary decisions that prejudiced his legal rights and deprived him of due process.[1] The court's decision to admit or exclude evidence during a trial is reviewed for an abuse of discretion, which occurs when the decision is outside the range of principled outcomes. *People v Malone*, 287 Mich App 648, 661; 792 NW2d 7 (2010). Similarly, the court's decision on discovery matters in criminal cases is reviewed for an abuse of discretion. MCR 6.201(J). An "error in the admission or exclusion of evidence . . . is not [a] ground for granting a new trial, for setting aside a verdict, or for vacating,

---

[1] Defendant has characterized his evidentiary challenges as due process violations. But "[m]erely framing an issue as constitutional does not make it so." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008).

modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

All relevant evidence is admissible unless otherwise restricted by law. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if the evidence is relevant and not otherwise excluded, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

## A. VICTIM LETTERS AND ACHIEVEMENT DOCUMENTS

Defendant first contends that letters sent to him from the victims were admissible because they undermined their credibility by establishing that they had a close and loving relationship with defendant. The court excluded these letters because they were mostly irrelevant and would have been a waste of time, but allowed defendant to cross-examine the victims about them. It also permitted defendant to use the letters to impeach the witnesses if they denied their existence.

Parties may offer opinion or reputation evidence in order to attack or support a witness's credibility. MRE 608(a). MRE 608(b) allows parties to inquire during cross-examination into specific instances of conduct to attack a witness's credibility, and MRE 608(a)(2) and MRE 405(a) allow parties to present character or reputation evidence to bolster the party's own witness, provided that the other party previously impeached the witness. Further, prior inconsistent statements of a witness may be proved by extrinsic evidence if the witness "is afforded an opportunity to explain or deny" the evidence and "the opposite party is afforded an opportunity to interrogate the witness thereon." MRE 613(b); see *People v Jenkins*, 450 Mich 249, 256-257; 537 NW2d 828 (1995). Once impeached by a prior inconsistent statement, a party can rehabilitate the witness with extrinsic evidence of prior consistent statements. *People v Jones*, 240 Mich App 704, 706-708; 613 NW2d 411 (2000); see *People v Edwards*, 139 Mich App 711, 715-716; 362 NW2d 775 (1984) (noting that the adoption of the Michigan Rules of Evidence did not abrogate the common law right allowing the use of prior consistent statements to rehabilitate a witness after being impeached by the opposite party). Although prior consistent statements generally qualify as inadmissible hearsay, MRE 802, MRE 801(d)(1)(B) excludes from hearsay such statements that are consistent with the declarant's testimony in the current trial, thus affording the adverse party an opportunity for cross-examination, if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." The prior consistent statement must have been made before the supposed fabrication, improper influence, or motive arose. *Jones*, 240 Mich App at 711.

Because these letters undermined the victims' credibility and were inconsistent with their trial testimony, this evidence was relevant to the defense. However, MRE 608(b) only allows defendant to inquire about specific acts that may undermine the witnesses' credibility. And because the witnesses admitted the existence of the letters, MRE 613(b) does not allow the introduction of the letters. Moreover, it appears that the court's ruling was reasonably based on a desire to avoid confusing the jury by presenting a large number of letters, and a concern about wasting the court's time with substantially cumulative evidence. Moreover, the court afforded

defendant the opportunity to present the substance of this evidence by allowing defendant to cross-examine the witnesses about the evidence. Because MRE 403 allows courts the discretion to exclude evidence that will confuse the jury or waste time, the court's decision was not an abuse of discretion.

## B. EXCLUDED TESTIMONY

Defendant also argues that the court abused its discretion in excluding documentary proof of his military service and his academic accomplishments. The court indicated that defendant would be permitted to testify to his accomplishments if he wanted to take the witness stand. It also indicated defendant would be permitted to introduce the documents in the event a witness challenged his military or academic records. But defendant chose not to testify at trial, and no witness challenged defendant's military or academic achievements. Had the court admitted this evidence, it would have impermissibly allowed defendant to bolster his credibility with extrinsic evidence even though plaintiff did not first impeach defendant regarding his credentials. MRE 608(b). The court's exclusion of this documentary evidence was in keeping with the rules of evidence, and thus not an abuse of discretion.

Defendant further claims that the court erred in preventing him from inquiring during cross-examination about a head wound EJ sustained when she was shot by a pellet gun. Defendant intended to show that the head wound may have changed her behavior and undermined her reliability and credibility as a witness. The court prevented defendant from making this inquiry on the basis that he had not laid the foundation for such questioning. The court noted defendant would need expert witness testimony to establish whether EJ in fact received injuries from the shooting and if so, whether the injuries impaired her mental faculties.

Lay witnesses, or non-expert witnesses, may only offer opinions or inferences that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. Opinions that are not based on this criteria must be offered through expert witnesses, and witnesses must first be qualified as an expert before they can offer such opinions. MRE 702; MRE 703.

Although the court erred to the extent that it excluded evidence based on lack of foundation, the decision not to allow defendant to inquire about EJ's head wound was proper. Defendant had the right to impeach EJ during cross-examination, but his right to inquire into this specific instance of extrinsic evidence was subject to the court's discretion. MRE 607; MRE 608(b). The court appeared to be concerned that this inquiry could mislead the jury without accompanying expert testimony to show the impact of the injury. This type of evidence is medical in nature, and therefore "scientific, technical, or other specialized knowledge" is needed to evaluate the impact of the purported injury on EJ's mental faculties. MRE 702. Defendant offered no expert testimony that could have assisted the jury in deciding whether any head wound inflicted on EJ actually impaired her decision-making and character for truthfulness. Thus, the court did not abuse its discretion in excluding this evidence.

Defendant further claims that the court erred in preventing him from asking RM, an older sister of the victims, her opinion on whether the physical dimensions of the home in which they lived prevented defendant from having the opportunity to molest the victims on a daily basis.

During the motion hearing, the parties stipulated to admission of the photographs showing the home conditions where the sexual assaults allegedly occurred, so the jury was able to view photographic evidence of the locations.

The court sustained plaintiff's objection on the ground that it was speculative. Because speculative evidence is inadmissible under MRE 403, *Phillips v Deihm*, 213 Mich App 389, 401-402; 541 NW2d 566 (1995), the court did not abuse its discretion in excluding this evidence. Defendant asked the witness to offer her opinion about the potential effect of the home conditions on defendant's capacity to abuse the victims. This is a hypothetical inquiry based on conjecture. And defendant did not establish any foundation allowing the court to determine if such an opinion was rationally predicated on RM's perception, MRE 701, as it is unclear how the witness possessed sufficient knowledge of room dimensions to offer an opinion. If that conclusion required specialized knowledge, then she would first have to be qualified as an expert witness. This did not happen. Accordingly, the court's decision was not an abuse of discretion.

## C. PRIOR CONSISTENT STATEMENTS

Defendant next challenges three particular instances where the court allowed plaintiff's witnesses to offer prior consistent statements of the victims to bolster their credibility. The victims testified at trial that defendant had vaginally penetrated them before they hit puberty, that they made a police report of the abuse in 1997, that they recanted in order to preserve their family, and that defendant had attempted to conceal the abuse by encouraging EC to commit suicide and threatening to kill her, and by kicking EJ out of the home, threatening to kill her, and telling her that she was retarded, was a liar, and was an agent of Satan. Later in the trial, a witness testified that LS told him in 1997 that defendant molested her, and later told him to forget about it because she did not want to break up their family. A different witness testified that EC, her childhood best friend, told her that defendant molested her, LS, and EJ, and that he used to watch EC shower. This witness also said that she was the one who recommended to EC to contact the police, implying that the victim's statement to the witness predated the police report in which the victims later denied the allegations. A third witness testified that EC or EJ told her many years ago that defendant was sexually abusing one of them. She also said that the victims sought her advice on how to respond to the sexual abuse, also implying that the statement predated their later report to the police.

Defendant contends that the testimony of these other witnesses was improperly admitted because: (1) the victims' prior statements, although consistent, were hearsay and improperly bolstered the witnesses' credibility; and (2) the evidence was inadmissible under MRE 403 because it was substantially more prejudicial than probative. As previously noted, a witness's credibility cannot be bolstered until it has been attacked by the adverse party, and bolstering is generally only permitted through opinion or reputation evidence. MRE 608(a). But a party can bolster a witness with prior consistent statements to rehabilitate his or her credibility after being impeached by the adverse party with a prior inconsistent statement. *Jones*, 240 Mich App at 706-708; see *Edwards*, 139 Mich App at 715-716. Such statements are not hearsay if "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." MRE 801(d)(1)(B).

-4-

Throughout trial, defendant attacked the credibility of the victims. He contended during opening arguments that the victims never disclosed the abuse to the most influential individuals in their lives, that they sent affectionate correspondence to him over the years, and that they quickly recanted the allegations to those individuals to whom the victims initially disclosed the abuse. During cross-examination, defendant elicited statements from the victims that undermined their credibility and noted that they previously gave statements to other people that were inconsistent with their current testimony. EC admitted that she did not disclose the abuse to the DHS, that she previously said that EJ was a liar and a problem child, and that she frequently denied that defendant abused them when interviewed as a child because she did not want to destroy their family. Defendant asked EJ why her current testimony was inconsistent to what she told others, as well as why she did not disclose defendant's sexual abuse to therapists or police when asked about it. EJ testified that she could not remember those incidents, but admitted that her statements to the police reflected that she was a habitual liar, implying that the allegations were fabricated for some ulterior and devious purpose. And LS admitted that she could not dispute a written statement signed by her to the police that no sexual abuse was occurring in their home. She also admitted to writing Facebook messages in which she explicitly denied the allegations against defendant.

Thus, defendant "opened the door" to evidence regarding prior consistent statements. The record reflects that the prior consistent statements of the victims, which were presented by three other witnesses, predated their later recantations to the police and other persons. And the victims conceded in their testimony that they recanted because they did not want to break up their family. Accordingly, plaintiff presented this evidence to rebut defendant's implied charge of recent fabrication, improper influence, and improper motive.

Moreover, the prior consistent statements were not unfairly prejudicial. See MRE 403. Plaintiff only offered these statements to rehabilitate the victim-witnesses after defendant attacked their credibility by noting that they previously gave inconsistent statements in which they denied the abuse. The challenged statements had significant probative weight. Further, there was minimal prejudicial effect because these statements presented cumulative evidence that merely corroborated the witnesses' trial testimony. Therefore, the court did not abuse its discretion in allowing the witnesses to testify to the victims' prior consistent statements.

## D. EXPERT WITNESS TESTIMONY

Defendant finally contends that the court erred by allowing plaintiff's expert to testify even though plaintiff failed to comply with the court order to submit the expert's report regarding her proposed testimony, implicitly arguing that the court should have excluded the expert's testimony as a discovery sanction. The court entered an initial order requiring plaintiff to give defendant a report or summary of the expert's proposed testimony "in advance of trial." Plaintiff provided to defendant an unsigned document entitled "Overview of Substance of Expert's Testimony" before trial. The document explained that the expert would testify as to why sexual abuse victims delay reporting, recant their disclosures, and maintain relationships with the abusers. Defendant renewed the objection during trial on the grounds that the document was not signed, was untimely provided to defendant the day before trial, and had failed to give defendant adequate notice of the substance of the expert's testimony. The court allowed the expert to testify, observing that the report "was provided in compliance with" the court order.

During her testimony, the expert witness explained why victims of sexual abuse often delay reporting of the abuse, recant the abuse, and maintain close bonds with their abusers. Thus, the expert's testimony adhered to the discussion topics listed in the document.

MCR 6.201 requires prosecutors to disclose "the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion." MCR 6.201(A)(3). The court rule clearly provides the proponent of the expert with a choice of alternatives regarding how to inform the other party of the substance of the expert's proposed testimony. The proponent can provide *either* (1) the expert's report or (2) "a written description of" the witness's proposed testimony. "There is nothing in the plain language of MCR 6.201(A) that permits a trial court to compel such a report to be created when it does not exist." *People v Philips*, 468 Mich 583, 590; 663 NW2d 463 (2003).

In this case, plaintiff provided a copy of the expert's curriculum vitae to defendant during the motion hearing. However, plaintiff was unable to provide a report from the expert because the expert had not prepared any such report. But plaintiff did provide a document summarizing the expert witness's proposed testimony. This overview explained that the expert's opinion is founded upon her education and experience. The overview noted that sexual abuse victims may delay disclosure, recant, or maintain relationships with their abuser, and noted that sexual abuse victims often act this way due to their guilt or shame, or because they still have love and affection for the abuser. As this document provided all the information required by MCR 6.201(A)(3), the court did not abuse its discretion in admitting the expert witness's testimony, constructively overruling defendant's objection, and refusing to strike the expert's testimony as a discovery sanction.

## II. OV 12

Defendant next contends that he is entitled to resentencing because the court erred in scoring offense variable (OV) 12 at 50 points. The interpretation and application of sentencing provisions implicate questions of law that are reviewed de novo by this Court. *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003). But under the judicial sentencing guidelines, the court's ultimate sentencing decision is reviewed for abuse of discretion. *People v Milbourn*, 435 Mich 630, 634, 636; 461 NW2d 1 (1990); see *People v Hardy*, 494 Mich 430, 437-438; 835 NW2d 340 (2013).

The "legislative [sentencing] guidelines apply only to offenses committed on or after January 1, 1999." *People v Reynolds*, 240 Mich App 250, 253-254; 611 NW2d 316 (2000). Because the Legislature did not intend for the new sentencing guidelines to have retroactive application to offenses before January 1, 1999, the judicial sentencing guidelines continue to apply to offenses committed prior to that date. *Id.*; MCL 769.34(1). And because all of defendant's charged offenses involved conduct that occurred before January 1, 1999, the judicial sentencing guidelines apply to his sentencing.

"[B]ecause the recommended ranges found in the judicial guidelines were not the product of legislative action, a sentencing judge was not necessarily obliged to impose a sentence within those ranges." *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). As such, the

incorrect scoring of an offense variable under the judicial guidelines is not grounds for reversal and resentencing, as the guidelines are merely a "means to achieve a proportionate sentence." *People v Raby*, 456 Mich 487, 496; 572 NW2d 644 (1998), superseded by statute as recognized in *Hegwood*, 465 Mich at 438-439. They "are tools to aid the trial court in the exercise of its authority and a framework for the appellate courts' inquiry into the question whether the sentence is disproportionate and, hence, an abuse of the trial court's discretion." *Raby*, 456 Mich at 498 (citation and internal quotation marks omitted). Under these guidelines, our courts may only resentence a defendant if the sentence imposed was invalid, which occurs when the sentence imposed is disproportionate to the "seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

The judicial sentencing guidelines state that OV 12 for a sexual offense should be scored at 50 points if the offense involved "2 or more criminal sexual penetrations," and that the court should score "all penetrations involving the offender arising out of the same criminal transaction." Michigan Sentencing Guidelines (2d), p 45. During sentencing, the court scored OV 12 at 50 points, adopting plaintiff's argument that defendant's molestation of the three victims occurred over a period of ten years, and thus should be treated as an ongoing criminal transaction. This finding is supported by the testimony of the three victims.

Although defendant contends that the court erred in scoring OV 12, he does not say how the finding was erroneous, let alone why the purported error warrants reversal. Nor does he allege that the sentence was disproportionate. He does assert that the jury never found that defendant molested the victims on a daily basis, but this is irrelevant to the issue of scoring the judicial guidelines. Defendant is not entitled to resentencing.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant finally argues that he is entitled to a new trial because his trial counsel provided him constitutionally ineffective assistance of counsel. A claim of ineffective assistance of counsel is preserved by timely moving for a new trial, or by moving for a *Ginther*[2] hearing. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Defendant did not move for a new trial or request a *Ginther* hearing, so the issue is unpreserved.

> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record. [*People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (citations and internal quotation marks omitted).]

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Although defendant is guaranteed the right to counsel under both the United States Constitution, US Const, Am VI, and Michigan Constitution, Const 1963, art 1, § 20, defendant bears a high burden in proving that his trial counsel was so deficient as to functionally deprive him of his right to effective counsel. *People v Meissner*, 294 Mich App 438, 458-459; 812 NW2d 37 (2011). The United States Supreme Court has set forth a two-prong test to determine whether counsel was ineffective in a given case. First, defendant must prove that his trial counsel failed to meet an objective standard of reasonableness based on "prevailing professional norms." *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, defendant must establish prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The crux of this test is to determine whether the mistakes by defendant's counsel effectively deprived defendant of the right to a fair trial. *Meissner*, 294 Mich App at 459. "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). And counsel cannot be deemed ineffective for failing to raise meritless objections. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Defendant's argument on this issue is confusing and cursory. He largely fails to identify what conduct of trial counsel failed to meet the prevailing professional norms. It appears that defendant's sole contention is that his counsel acted deficiently in failing to preserve an evidentiary challenge when his counsel failed to repeatedly object to plaintiff's introduction of the victims' prior consistent statements. However, defendant's counsel successfully preserved these challenges by frequently objecting. Because defendant's counsel successfully preserved the issue, this argument is without merit. As defendant does not present any other conduct by his trial counsel that was not objectively reasonable, defendant is not entitled to relief.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly