*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRENDA GAIL HAZARD,

Defendant-Appellant.

UNPUBLISHED
March 26, 2019

No. 341544
Genesee Circuit Court
LC No. 16-040391-FC

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Brenda Gail Hazard admittedly consumed alcohol and cocaine and then drove to a party store with her roommate. While in the parking lot, she had a confrontation with the victim, Michael Woodall. She backed her vehicle out of the parking spot and then drove at the victim, striking him. He later died from his injuries. A jury convicted defendant of second-degree murder, MCL 750.317, and operating under the influence (OUI) causing death, MCL 257.625(4). On appeal, defendant raises several claims of error with respect to her trial, all of which are without merit.

## I. BACKGROUND

On August 28, 2016, defendant drove her vehicle to the local party store for cigarettes. Defendant's roommate, Kenneth Lewis, rode with her. The party store's video-surveillance system captured much of what happened next.

The video showed defendant's vehicle pull into one of the parking spaces nearest to the store's entrance. Approximately five seconds after defendant pulled into the parking space, the victim appeared in the video, walking toward the store's entrance. Lewis exited defendant's vehicle, while defendant remained seated in the driver's seat. The victim stopped short of the store's entrance and stood near the driver's side of defendant's vehicle, while Lewis stood in front of the passenger's side. Defendant then put her vehicle in reverse, backed out of the parking space, drove forward toward the victim, and stopped in front of him. The victim moved away from defendant's vehicle, but then walked back in front of defendant's vehicle near the driver's side. Defendant flashed her vehicle's high beams at the victim, and as the victim moved

-1-

closer to the front of defendant's vehicle, defendant accelerated her vehicle forward and hit the victim. As a result, the victim fell to the ground and hit his head.

City of Burton Police Officers Jeremy Driggett and Erin Hodge immediately responded to the scene. Officer Hodge separated all of the potential witnesses, including defendant and Lewis, and noticed that defendant appeared very agitated and excited. Without being prompted, defendant told Officer Hodge that the victim was yelling at her, he started to come at her with his fists in the air, he would not back away from her, and she hit the victim with her vehicle because she was scared that the victim would hurt her. Officer Hodge viewed the video-surveillance footage and informed Officer Driggett that defendant's version of events did not match the contents of the video. Officer Hodge also informed Officer Driggett that the incident appeared to be intentional. As a result, the police summoned an accident reconstructionist to take measurements of the scene.

Defendant submitted to a preliminary breath test at the scene, which revealed that she had a blood-alcohol level of 0.07%. Defendant subsequently submitted to a blood draw, in which she tested positive for cocaine. Additionally, a blood test revealed that the victim had a blood-alcohol level of 0.20%, was positive for marijuana, and was taking various medications for seizures.

Defendant was charged with second-degree murder and OUI causing death and proceeded to trial on both charges. At trial, defendant conceded that she proximately caused the victim's death by hitting him with her vehicle and that she voluntarily decided to drive knowing that she had consumed cocaine. With regard to the charge of second-degree murder, therefore, the only disputed issues for trial were whether defendant formed the requisite intent to commit the crime and whether she acted in self-defense.

During opening statements, defense counsel stated that defendant—who had been the victim of domestic violence in the past—was "scared to death" of the victim, and she acted in self-defense when she hit the victim with her vehicle. In response to this claim of self-defense, the prosecutor introduced in his case-in-chief evidence of the victim's character for violence. Khristal Woodall, the victim's sister, testified that the victim was a schizophrenic and an alcoholic, he had some learning difficulties, and he suffered from bipolar disorder. His sister also testified that she never knew the victim to be a violent person.

Jimmy Hamilton and Chad Miller, two store employees who were working on the night in question, also testified during the prosecutor's case-in-chief. Hamilton testified that, at approximately 1:00 p.m. that day, the victim, a regular customer, came into the store and purchased alcohol. At approximately 8:00 p.m., the victim came back to the store a second time to purchase more alcohol, but he did not have enough money. Hamilton believed that the victim was intoxicated at that time because the victim was staggering and laughing a great deal. Hamilton told the victim to leave the store because he lacked sufficient money to purchase alcohol, and the victim complied. The victim remained outside the store asking customers for money, and Hamilton again asked the victim to leave the premises. The victim complied, but at approximately 11:30 p.m., the victim came back to the store a third time—when he was hit by defendant's vehicle. Miller testified to the same version of events, but without the specific

timeline.    Neither Hamilton nor Miller observed defendant's vehicle hit the victim.    Both Hamilton and Miller testified about the victim's peaceful character.

In addition to the store employees, Officer Hodge testified regarding an earlier encounter that she had with the victim.   She testified that, several months before the incident, she was called to respond to an alarm at a restaurant.   Officer Hodge saw the victim climbing out of a dumpster behind the restaurant, putting pizza in his pockets.   Officer Hodge testified that when she spoke to the victim, it was like speaking to a child.   The victim hung his head and attempted to return the pizza, stating that he was sorry.   Defense counsel did not object to this testimony.

Lewis also testified during the prosecutor's case-in-chief.   While investigating the incident, police discovered that Lewis possessed a small bag of marijuana.   The prosecutor granted him immunity from prosecution provided that he testified about what he observed during the incident, and the jury was made aware of this.   Lewis testified that defendant offered him a ride to the store so that he could purchase cigarettes.   He was unaware that defendant had previously used cocaine.

As defendant pulled the vehicle into the store's parking lot, he observed the victim standing in the parking space where defendant was attempting to park.   Contrary to what was seen in the video, Lewis asserted that the victim was blocking the parking space.   Lewis got out of the vehicle and asked the victim to move out of the way, but the victim would not move. Shortly thereafter, the victim started to run at defendant with his fists in the air.   Lewis did not hear the victim say anything to defendant.   Lewis claimed that he saw a beer bottle near the victim's body, but he could not remember whether the victim had the beer bottle in his hand when he approached defendant.   Lewis believed that the victim was a threat to defendant and that defendant acted in self-defense.

Grand Blanc Township Police Officer Samuel Evans was the last witness to testify during the prosecutor's case-in-chief.   The prosecutor sought to qualify Officer Evans as a drug-recognition expert (DRE), an expert trained to focus on the signs and symptoms a suspect might exhibit when impaired by certain drugs.   Officer Evans first testified regarding the DRE training program, as well as the certification criteria necessary to become a DRE.   Defense counsel objected to Officer Evans testifying as a DRE, stating, "I've not really heard of drug recognition as being an area of expertise.   I'll just simply object for the record."   The trial court did not rule on defense counsel's objection, but allowed Officer Evans to testify about certain behaviors and mannerisms that drug users, specifically cocaine users, were likely to exhibit.

Officer Evans testified that, as a DRE, he was trained to determine the type of drug that a person ingested based on the signs and symptoms that the person exhibited while being observably impaired.   Officer Evans did not personally observe defendant on the day of the incident; rather, he only testified about behaviors that a person who ingests cocaine would likely exhibit.   He testified, in relevant part:

> [F]irst we're going to talk about cocaine . . . .   You're going to see many times anxiety, restlessness, rapid, jerky movement, rigid movement, agitation, belief in things that are not true.   In other words, ascribing hostility to someone else when, in fact, there may not be any hostility there. . . .   Someone is out to get me.   Those

kinds of things. And those are really big officer safety concerns for police officers as well because individuals with that kind of thought process tend to harm themselves, carry knives, and things of that nature just for protection. . . . Possibly combative [be]cause what this drug is doing is . . . what we call the fight and flight systems of the body, the same systems when you get angry, you get upset, those kinds of things that can come into play with someone who's having a bad trip.

Officer Evans went on to describe cocaine users as wanting to feel happy, and he also discussed the consequences of being impaired by cocaine, stating:

[I]f I'm happy and I'm having all these things happen to me, I still remember to look both ways before I cross the street. I still remember that, hey, I'm stepping into Walmart. My kids are out in the car. I still remember I have kids. You know? Those kinds of things. When you're on that high on these drugs, you don't think about things like that. Bottom line, if this category's active in your communities, you're going to have more domestic violence, you're going to have more child abuse, you're going to have more robberies, assaults, [and] homicides. The whole nine yards. It comes with the territory of these category drugs.

He concluded that cocaine causes a user to exhibit paranoia more than any other drug category, and the drug can cause a person to act more aggressively.

After the prosecutor rested his case, defendant testified on her own behalf. Defendant first testified that her ex-boyfriend had physically abused her, and she described an instance when her ex-boyfriend placed a gun in her mouth and threatened to kill her. Defendant then described her interaction with the victim, stating that she first noticed the victim before she entered the store's parking lot. She observed the victim standing on the street corner with a beer bottle in his hand, his mouth was moving, and he looked at her in an angry way. Defendant claimed that the victim came at her with his hands raised, and she then hurried into the store's parking lot. After she parked, defendant saw the victim coming at her again. Defendant admitted that she could not see whether the victim still had the beer bottle in his hand as he approached her vehicle.

Defendant explained that, after she and Lewis both told the victim to back away numerous times, defendant moved her vehicle toward the victim in an effort to "scare him" away. She did not intend to hurt the victim, but she was scared and feared that the victim would hurt her. Defendant admitted that she ingested "a line of cocaine" and drank a glass of wine before the incident. Defendant asserted, however, that neither the cocaine nor the wine affected her perception of the incident, and she acted in self-defense.

After hearing all of the evidence and the trial court's instructions, the jury convicted defendant of both charges. The trial court sentenced defendant to concurrent terms of 20 to 40 years in prison for the second-degree murder conviction and 86 to 180 months in prison for the OUI-causing-death conviction.

This appeal followed.

-4-

## II. ANALYSIS

### A. STANDARD OF REVIEW

Defendant raises several claims of evidentiary error by the trial court. This Court reviews a trial court's decision to admit evidence for an abuse of discretion, but reviews de novo preliminary questions of law, including whether a rule of evidence precludes admissibility. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). Generally, the "determination regarding the qualifications of an expert and the admissibility of expert testimony is within the trial court's discretion." *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008) (cleaned up). If the trial court erred in admitting evidence over the defendant's objection, then the defendant has the burden of establishing that it is more probable than not that a miscarriage of justice occurred because of the error. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001); MCL 769.26.

Defendant did not preserve all of her claims of error. "A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights." *People v Lechleitner*, 291 Mich App 56, 59; 804 NW2d 345 (2010) (citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. If a defendant satisfies all three requirements, then reversal "is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

### B. TESTIMONY OF OFFICER HODGE

Defendant first argues that the trial court erroneously admitted Officer Hodge's testimony that defendant's conduct, as shown on the surveillance video, appeared to be intentional. Defendant argues that her intent when she struck the victim was the sole issue for the jury to decide on the second-degree-murder charge, and the jury was fully capable of determining whether defendant acted with malice. Defendant also argues that Officer Hodge's testimony constituted an improper opinion regarding the ultimate issue in the case and that the officer's testimony was not admissible to explain the steps taken during the police investigation of the incident. Finally, defendant argues that the error was outcome-determinative. We disagree.

For second-degree murder, the prosecutor must prove, among other things, that the defendant acted with malice. *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (cleaned up). If a person kills another not with malice, but in self-defense of herself or another, then she will not be guilty of second-degree murder. Specifically, under the Self-Defense Act, MCL 780.971 *et seq.*:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

Self-defense is a complete defense to a second-degree murder charge.

Defendant sought to establish that she acted in self-defense. Immediately after the incident, defendant told Officer Hodge that the victim was yelling at her, he started to come at her with his fists in the air, he would not back away from her, and defendant hit the victim with her vehicle because she was scared that the victim would hurt her. Officer Hodge reviewed the video, informed Officer Driggett that defendant's version of events did not match the video, and indicated to the other officer that the incident "appeared to be intentional." It is this testimony that defendant now argues impermissibly embraced the ultimate question of defendant's intent and thus should have been left to the jury.

There is no reversible error here. Officer Hodge testified that, upon watching the video after talking with defendant, the officer believed that the incident was intentional, she told this to the other officer on the scene, and this is what led her to call an accident reconstructionist to the scene. An officer can testify about the steps of the investigation from the officer's own perceptions. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). While an officer cannot "opine about the defendant's guilt or innocence," *id.* at 81, the officer can provide an opinion based on the officer's own perceptions, even on "an ultimate issue to be decided" by the jury, MRE 704; see also MRE 701. To be clear, Officer Hodge did *not* testify that, for example, she concluded at trial that, based on a video played for the jury, defendant acted intentionally. See, e.g., *People v Spitler*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2017 (Docket No. 331962), pp 2-3, 5 (concluding that the use of "linguistic statement analysis" by a purported expert based on audio and video played to the jury was improper), remanded in part, lv den in part 501 Mich 965 (2018). Rather, Officer Hodge testified about what she perceived during the investigation, and based on that perception, the investigatory steps that followed.

Given this, we concluded that Officer Hodge's testimony was proper, and the trial court did not abuse its discretion by permitting it. Moreover, the trial court gave a limiting instruction to the jury indicating that Officer Hodge's testimony was offered to show what the officer did next, not for the truth of the matter asserted—i.e., that defendant's conduct was intentional. Because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors," *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), defendant is not entitled to relief on this issue.

## C. TESTIMONY OF OFFICER EVANS

Defendant next takes issue with the testimony of Officer Evans on several grounds. Defendant argues that the trial court erroneously qualified Officer Evans as an expert witness in the field of drug recognition because drug recognition does not satisfy all of the factors required under *Daubert*. She also maintains that, even if drug recognition is a reliable field of expertise, the trial court erred by permitting Officer Evans to testify beyond the scope of his expertise. Neither contention has merit on this record.

*MRE 702 and* Daubert. At trial, defendant objected to Officer Evans's testimony on the ground that drug recognition is not a recognized area of expertise. On appeal, defendant has shifted grounds and now argues that Officer Evans's testimony was inadmissible because drug recognition does not satisfy all of the *Daubert* factors. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). Because defendant did not argue in the trial court that drug recognition fails to satisfy all of the *Daubert* factors, this issue is not preserved for appellate review. Defendant's argument, therefore, is subject to plain-error review. *Carines*, 460 Mich at 763.

MRE 702 provides that the trial court may admit expert testimony under the following circumstances:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Michigan evidentiary law incorporates the requirements from *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), known as the "*Daubert* factors," *People v Kowalski*, 492 Mich 106, 131; 821 NW2d 14 (2012). A trial court evaluating the reliability of expert testimony under the *Daubert* factors may consider (1) whether the theory in question has been tested, (2) whether the theory has been subject to peer review and publication, (3) the theory's potential rate of error, and (4) whether the theory has gained general acceptance in the relevant community of expertise. *Kowalski*, 492 Mich at 131, citing *Daubert*, 509 US at 593-594. These factors are not exhaustive, and the inquiry is a flexible one. *Kowalski*, 492 Mich at 120.

When deciding whether to admit expert testimony, the trial court must act as a "gatekeeper" to ensure that the expert testimony is reliable under MRE 702. *People v Yost*, 278 Mich App 341, 393-394; 749 NW2d 753 (2008). The rule "mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). The purpose of this searching inquiry is to ensure that the jury is not relying

on unproven and unsound scientific methods. *People v Lane*, 308 Mich App 38, 52; 862 NW2d 446 (2014).

Michigan courts have not yet held in a published decision that the drug-recognition protocol is reliable. Several courts outside of Michigan have, however, considered the issue and concluded that the protocol is reliable. See, e.g., *State v Chitwood*, 369 Wis 2d 132, 155-161; 2016 WI App 36; 879 NW2d 786 (2016); *Burton v Commonwealth*, 300 SW3d 126, 141 (Ky, 2009); *State v Daly*, 278 Neb 903, 909-918; 775 NW2d 47 (2009); *State v Aleman*, 145 NM 79, 89; 194 P3d 110 (NM App, 2008); *State v Baity*, 140 Wash 2d 1, 12-14; 991 P2d 1151 (2000). If this was a case where a drug-recognition expert had observed a suspect and, based on that observation, had concluded that the suspect was under the influence of a particular drug, then this might have been the case to decide whether, in Michigan, the drug-recognition protocol meets the legal requirements of MRE 702 and *Daubert*.

This is not that case. Officer Evans did not observe defendant immediately after the incident, nor did Officer Evans testify that, in his expert opinion based on application of the protocol, defendant was under the influence of alcohol or cocaine. Defendant had already admitted that she consumed both substances, and the record showed that she did, in fact, test positive for both substances immediately after the incident. Officer Evans only discussed the behaviors that one would expect to see from someone who used cocaine, as well as the physical and mental effects that cocaine has on a person. This was, in effect, not testimony about conclusions formed from applying the drug-recognition protocol; it was simply testimony about how a drug impacts someone physiologically and how that person might react under certain stressful circumstances. Thus, whether drug-recognition protocol is a reliable method for determining whether a person has a particular drug in her system is simply inapposite to this appeal.

*Testimony Outside the Witness's Expertise*. Defendant appears to recognize this and, on appeal, now claims that the trial court erred by allowing Officer Evans to testify beyond his expertise. Similar to her *Daubert* claim, defendant did not preserve this claim for appeal. And, given Officer Evans's extensive training and experience as established at trial, the trial court did not err by permitting Officer Evans to testify on this narrow subject, despite the fact that the officer neither personally observed defendant nor conducted the 12-steps of the DRE protocol. See, e.g., *State v Wynne*, 182 Conn App 706, 716, 719-720; 190 A3d 955 (2018) (finding no reversible error where the DRE—who did not observe the defendant on the day of his arrest—testified regarding the combined effects that marijuana and alcohol have on a person, but did not discuss the defendant's level of impairment).

*Appealing to the Jury's Sense of Civic Duty*. Defendant further asserts that Officer Evans improperly appealed to the jury's civic duty by portraying drug users as bad people. The claim is without merit for two reasons. First, Michigan law forbids a *prosecutor*, not a witness, from appealing to the jury's sense of civic duty. *People v Thomas*, 260 Mich App 450, 455-456; 678 NW2d 631 (2004). Second, Officer Evans's testimony cannot be fairly characterized as appealing to the jury's sense of civic duty. Rather, Officer Evans simply explained the consequences that cocaine use has on individuals and their communities. While Officer Evans's testimony, that cocaine use can lead to more crime, could possibly be construed as appealing to the jury's fears or prejudices regarding drug users, Officer Evans did not call on the jury to

convict defendant because of her cocaine use. Thus, the trial court did not err in admitting Officer Evans's testimony.

*Any Assumed Error Regarding Officer Evans Was Harmless.* Even assuming for the sake of argument that any error occurred with respect to Officer Evans's testimony, the admission of his testimony did not affect defendant's substantial rights. There was no question that defendant had alcohol and cocaine in her system during the incident. The video of the incident showed the victim walking up to the store's entrance after defendant parked her vehicle in the store's parking lot. Defendant then put her vehicle in reverse, inched forward near the victim, and flashed her high beams at the victim. She accelerated her vehicle forward and hit the victim with her vehicle. Defendant testified that she did not mean to hurt the victim, but her actions—as depicted on the video along with her own trial testimony—made clear that she intended to perform an act in obvious disregard of life-endangering consequences that could cause death or great bodily harm. See *Bergman*, 312 Mich App at 487. As a result, Officer Evans's testimony did not amount to plain error affecting defendant's substantial rights, as such error—if any—was harmless in the face of the overwhelming inculpatory evidence against defendant. See *Carines*, 460 Mich at 763-764.

## D. VICTIM'S CHARACTER FOR PEACEFULNESS

Defendant next claims that the trial court plainly erred by admitting evidence of the victim's peaceful character. Evidence of a victim's aggressive or peaceful character is covered by MRE 404:

> (a) Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> * * *
>
> (2) When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor[.]

Thus, evidence of a victim's character may be presented by the prosecutor in a homicide case "only to rebut evidence that the victim was the first aggressor and that the defendant was acting only in self-defense." *People v Edwards*, 139 Mich App 711, 718-719; 362 NW2d 775 (1984), citing MRE 404(a)(2). The mere "possibility that defendant might have raised a self-defense claim does not excuse the admission of this evidence." *Edwards*, 139 Mich App at 719. The prosecutor may not introduce in the case-in-chief evidence of the victim's character for peacefulness merely in anticipation that the defendant will provide evidence of the victim's character for aggression during the defendant's case. *Id*. at 718-719.

Furthermore, even when evidence is otherwise admissible under MRE 404(a), MRE 405 provides restrictions on the methods of proving a person's character:

> (a) In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

> (b) In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

"As a general rule, the character of the victim may not be shown by specific instances of conduct unless those instances are independently admissible to show some matter apart from character as circumstantial evidence of the conduct of the victim on a particular occasion." *People v Harris*, 458 Mich 310, 319; 583 NW2d 680 (1998).

In his opening statement, defense counsel characterized the incident as a "tragedy," describing the victim as a bipolar, schizophrenic man who had consumed large amounts of alcohol on the day in question, while describing defendant as having been battered by an abusive ex-boyfriend. Defense counsel stated that neither party knew each other nor how the other party would respond to conflict. Defense counsel further stated that, because of this unfamiliarity, defendant was "scared to death" of the victim, "was afraid that something bad was going to happen to her and that's why she took the actions she did." The prosecutor then proceeded with the case-in-chief, introducing testimony describing the victim's peaceful character.

Because defense counsel's opening statement advanced defendant's self-defense theory, the prosecutor was permitted in the case-in-chief to introduce evidence of the victim's peaceful character to rebut defendant's self-defense theory. MRE 404(a)(2). While defendant had not yet introduced testimony advancing her self-defense theory, defense counsel's opening statement demonstrated that there was more than a mere "possibility" that defendant would raise a self-defense claim. See *Edwards*, 139 Mich App at 719. Although we acknowledge that an opening statement is not evidence within the meaning of MRE 404(a)(2), when a defense counsel's opening statement advances the defendant's theory of self defense, that opening statement allows the prosecutor to admit—in the prosecutor's case-in-chief—evidence of the victim's character for peacefulness to rebut the defendant's theory that the victim was the first aggressor. In this case, the trial court did not err in allowing the prosecutor to introduce evidence of the victim's peaceful character after defense counsel made clear in his opening statement that he would be pursuing a self-defense theory.

Even if the trial court erred in allowing the prosecutor to introduce these witnesses' testimony, the error did not affect defendant's substantial rights. Not only did defendant actually testify that she acted in self-defense, but Lewis (who testified during the prosecutor's case-in-chief, but after Khristal, Miller, Hamilton, and Officer Hodge) testified that the victim was the first aggressor, the victim was a threat to defendant, and defendant acted in self-defense. Thus, the prosecutor's evidence of the victim's character for peacefulness, although potentially premature, did not affect defendant's substantial rights because the prosecutor's evidence would

have been admissible to rebut the testimony of defendant and Lewis—i.e., that the victim had a character for aggression. Moreover, any error that occurred in admitting the testimony of Khristal, Miller, Hamilton, and Officer Hodge under MRE 404(a)(2) was harmless in the face of the overwhelming inculpatory evidence against defendant.

Defendant also asserts as error the fact that Officer Hodge testified regarding a specific instance of the victim's conduct, in violation of MRE 405. Officer Hodge testified on direct examination about an incident that occurred several months before this one, involving a call to a restaurant. Officer Hodge testified that when she responded to the scene, she observed the victim climbing out of a dumpster and watched as the victim put slices of pizza, which he had found in the dumpster, in his pockets. Officer Hodge testified that her interaction with the victim was like speaking with a child and that the victim tried to return the pizza that he found in the dumpster.

We agree that Officer Hodge's testimony describing the earlier incident was inadmissible, as it described a specific instance of conduct regarding the victim's character for peacefulness. She testified about the incident *on direct examination*, not cross-examination, and her testimony described the victim's character for peacefulness, which was not an essential element to a charge, claim, or defense of either the prosecutor or defendant. MRE 405; see *Harris*, 458 Mich at 319. Therefore, we agree with defendant that the trial court erred in admitting Officer Hodge's testimony describing the victim's character for peacefulness in the form of a specific instance of conduct.

Defendant cannot demonstrate, however, that the trial court's error affected her substantial rights. As noted already, the prosecutor presented overwhelming evidence of defendant's guilt, including the store video, defendant's testimony that she tried to scare the victim by driving her vehicle at him, and defendant's admission that she ingested cocaine before the incident. Therefore, the trial court's error in admitting Officer Hodge's testimony regarding the earlier encounter with the victim did not amount to plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764.

E. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant makes claims of ineffective assistance of counsel based on her trial counsel's failure to object to the testimony regarding the victim's character for peacefulness. As explained earlier, the trial court properly admitted the testimony of Khristal, Miller, and Hamilton under MRE 404(a)(2). Because the evidence was properly admitted, any objection to that evidence would have been futile. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

We agree with defendant that the trial court erred in admitting Officer Hodge's testimony describing the victim's character for peacefulness in the form of a specific instance of conduct, but conclude that defendant could not demonstrate that the trial court error affected her substantial rights because the prosecutor presented overwhelming evidence of defendant's guilt, and the trial court's error therefore did not amount to plain error that affected defendant's substantial rights. Yet, a defendant's failure to satisfy the plain-error test in connection with a legal mistake by the trial court does not necessarily preclude the defendant from establishing the

ineffective assistance of his trial counsel relating to the same mistake. *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). To establish the ineffective assistance of counsel, a defendant must show that trial counsel's performance was objectively deficient and the deficiency prejudiced the defendant. *Id.* at 9. Prejudice means a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* We conclude that the outcome of these proceedings would not have been different even if defense counsel had objected to testimony describing the victim's character for peacefulness, including testimony in the form of a specific instance of conduct. The prosecutor presented overwhelming evidence of defendant's guilt, and defendant cannot establish that she was prejudiced by the erroneous admission of this testimony.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron